UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:04CV-452-R

PRO-ONSITE TECHNOLOGIES, LLC,

PLAINTIFF

v.

JEFFERSON COUNTY, KY. CLERK'S OFFICE, et al.,

DEFENDANTS

**MEMORANDUM OPINION**

The Defendant, Jefferson County, Ky. Clerk's Office ("Clerk's Office"), has moved to dismiss the claims of Plaintiff Pro-Onsite Technologies. LLC ("Pro-Onsite").  (Dkt. # 24).  Pro-Onsite responded (Dkt. # 28) and the Clerk's Office replied (Dkt. # 29), and this matter is now ripe for decision.  For the reasons given below, the Clerk's Office's motion to dismiss is **GRANTED**.

**BACKGROUND**

Jefferson County Clerk Bobbie Holsclaw ("Clerk") invited bids for a contract to install data communications wiring in the clerk's offices.  Pro-Onsite bid on the project, and its bid was substantially lower than any of the other bids received by the Clerk's Office, but the contract was awarded to Warren Technologies, Inc. ("Warren Technologies").  Pro-Onsite alleges that several clerk's office employees informed it that it was the lowest bidder and would receive the contract; the Clerk alleges that Pro-Onsite's bid did not comply with the specifications contained in the invitation to bid.  Pro-Onsite challenges the Clerk's Office's decision to award the contract to Warren Technologies on the basis of the Clerk's Office's alleged breach of the bid contract and

violations of KRS 45A.005 *et seq.*, the Louisville Metro Government Procurement Code.  Pro-Onsite sought injunctive relief and a declaratory judgment, which this Court denied (Dkt. # 8).  Pro-Onsite now seeks an award of damages.  The Clerk's Office bases its motion to dismiss on its argument that Pro-Onsite's claim fails to meet the requirements of 28 U.S.C. §1332(a), which requires complete diversity between the parties and an amount in controversy in excess of $75,000; specifically, the Clerk's Office alleges that Pro-Onsite fails to meet the amount-in-controversy requirement because the damages sought in its complaint do not exceed $75,000.


## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).  Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss.  *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002).  A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

2

### ANALYSIS

Pro-Onsite's claim that its complaint meets the jurisdictional requirements of this court must be assessed as the time of its filing. "The amount in controversy for federal diversity jurisdiction purposes is determined as of the time the action is commenced. Subsequent actions cannot divest the court of jurisdiction, once it has been acquired." *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997. However, "[t]he complaint should not be dismissed for want of jurisdiction if demand is made for more than the jurisdictional amount, unless it appears to a legal certainty that plaintiff cannot recover the jurisdictional amount." *Tullos v. Corley*, 337 F.2d 884, 887-88 (6th Cir. 1964) (*citing Scottish Union & Nat'l Ins. Co. v. Bejcy*, 201 F.2d 163 (6th Cir. 1953); *Fireman's Fund Ins. Co. v. Railway Express Agency,* 253 F.2d 780 (6th Cir. 1958).) The court in *Tullos* defined legal certainty as "a probability that the value of the matter in controversy exceeds the jurisdictional amount." *Id.*

At the time Pro-Onsite filed this action, it sought injunctive and declaratory relief. In such actions, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 548 (6th Cir. 2003) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). Pro-Onsite argues that the value of the object of the litigation in this case is $114,500.00, which is the amount of Pro-Onsite's bid on the project and which clearly meets the jurisdictional requirements set forth in §1332(a).

The value of the object of the litigation, which in this case was the right to perform under the contract on which Pro-Onsite bid, "is measured by the losses that will follow" from the

3

wrongful denial of the right to perform the contract.  *Hunt v. Washington State Apple Adver.*

*Comm'n*, 432 U.S. 333, 347 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178,

181, 56 S.Ct. 780, 781, 80 L.Ed. 1135 (1936); *Buck v. Gallagher*, 307 U.S. 95, 100, 59 S.Ct.

740, 742, 83 L.Ed. 1128 (1939); *Kroger Grocery & Baking Co. v. Lutz*, 299 U.S. 300, 301, 57

S.Ct. 215, 81 L.Ed. 251 (1936); *Packard v. Banton*, 264 U.S. 140, 142, 44 S.Ct. 257, 258, 68

L.Ed. 596 (1924)).  Because the value must be measured in terms of losses to Pro-Onsite, the

value cannot be the entire contract price as Pro-Onsite suggests.  Pro-Onsite valued its lost

profits on the contract at $29,000.00, well short of the $75,000.00 minimum amount in

controversy required for federal court jurisdiction pursuant to §1332(a).

      Pro-Onsite, however, argues that its losses would also include "lost opportunity costs for

other projects with Louisville Metro or other customers that Plaintiff stood to receive following

the completion of the Project with Defendant Clerk's Office."  (Plaintiff's Memorandum in

Opposition to Defendant's Motion to Dismiss, Dkt. # 28, at 7.)  The Clerk's Office argues that

such losses are too speculative to be recoverable under Kentucky law, and therefore would not

qualify as part of the value of the object of the litigation.  If it appears to a legal certainty that

those future profits would *not* be recoverable under Kentucky law (because ascertaining their

value would be too speculative or for another reason), then Pro-Onsite's complaint must be

dismissed for failure to meet the amount-in-controversy requirement of §1332(a).  If, however,

the Court *cannot* say to a legal certainty that Pro-Onsite will not be able to prove any set of facts

which would entitle it to recover lost profits that would bring its damages over the $75,000.00

minimum, then the Court must retain jurisdiction.

      To determine whether Pro-Onsite could be entitled to damages beyond the $29,000 it

estimated as its profits from the contract, the Court must look to Kentucky law.  In a breach of warranty case, the Kentucky Court of Appeals considered a similar claim and found future profits too speculative to constitute proper recovery.  *Schleicher v. Gentry*, 554 S.W.2d 884 (Ky. Ct. App. 1977).  In that case, the Court of Appeals endorsed language from *Emerson v. Pacific Coast and N. Packing Co.*, 96 Minn. 1, 104 N.W. 573 (Minn. 1905), quoted in 22 Am.Jur.2d *Damages* § 174 at 247 (1965):

> It has been said that four principal considerations have been recognized and applied, namely: (1) How far the contract under consideration specifically provides for the award of damages for prevented gains upon its breach or reasonably implies such an award as a necessary effect of a natural construction of its terms; (2) the degree of certainty with which the harm can be traced to the wrongful conduct complained of as its legal cause; (3) the extent to which the inherent difficulties and uncertainties of calculating the amount of prevented gains render the measure of damages speculative and untrustworthy; and (4) the possibility of applying to the controversy some more satisfactory standard of compensation.

554 S.W.2d, at 886.  The *Schleicher* court overturned the lower court's grant of an award of future profits in that case based upon its determination that the defendant's "responsibility for [the loss of future profits] was based upon evidence that was speculative, remote, and uncertain." *Id.*  In that case, the defendant had mistakenly switched two mares he was selling at auction, and the plaintiff had purchased the less valuable horse, believing it was the more valuable one.  *Id.* at 885.  The plaintiff's damages included the difference between the value of the two horses, a stud fee paid by the plaintiff to breed the horse, and lost profits attributable, the lower court said, to the profits lost on the foal which would have been born from the breeding had the plaintiff purchased the mare he believed he was purchasing.  *Id.*  On appeal, the Court of Appeals affirmed the judgment as to the difference in value between the two horses and the stud fee, but disallowed the portion of the award that compensated the plaintiff for the price he would have

5

received for selling the never-conceived foal.  *Id.*

Specifically, Pro-Onsite seeks "lost opportunity costs for other projects with Louisville Metro or other customers that Plaintiff stood to receive following the completion of the Project with Defendant Clerk's Office."  (Plaintiff's Response to Motion for Summary Judgment, Dkt. # 28, at 7).  Pro-Onsite does not specify the amount of these damages, but for purposes of this motion the Court will assume that, if awarded, they would be sufficient to bring the claim over the $75,000 jurisdictional minimum.  Nevertheless, in light of the standard announced in *Schleicher*, the existence and the amount of such damages are too speculative to be awarded. If the profits from the sale of the foal in *Schleicher* (which sale is frequently the outcome of the purchase of a mare) are too far removed, it stands to reason that future contracts for the provision of services in Pro-Onsite's business are equally speculative.  Further, "...profits anticipated from a collateral transaction must not only be proved with reasonable certainty, but must also be shown to have been reasonably within the contemplation of the defaulting party when the contract was made."  Am.Jur. *Damages* § 448.  Again analogizing from *Schleicher*, if the sale of a foal born to the mare in that case was not within the contemplation of the parties when they consummated the sale of the mare, it does not make sense to say that future contracts (even those with Metro Louisville) were within the contemplation of the Clerk's Office when it negotiated the bid with Pro-Onsite.  *See also Van Deren Hardware Co. v. John H. Preston & Son*, 5 S.W.2d 1052 (Ky.1928), *Henry Porter & Co. v. Lacy*, 105 S.W.2d 818 (Ky. 1937), *Paducah Hosiery Mills v. Proctor & Schwartz*, 276 S.W. 803 (Ky. 1925); *but see St. Marys Mach. Co. v. Cook*, 218 S.W. 733 (Ky. 1920).  Therefore, the future profits would not be recoverable as a matter of law and must be excluded from the amount in controversy.  *Hayes v. Equitable Energy*

6

*Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001).  It is a legal certainty, then, that Plaintiffs may not recover in excess of the amount required for jurisdiction under § 1332(a); on this basis, the case must be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. An appropriate order shall issue.